# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11-cr-00156-LDG-RJJ |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ALEX P. SORIA | ) | **Petition for Action on Conditions** |
| | ) | **of Pretrial Release - #16** |
| Defendant. | ) | |
| | ) | |

      This matter is before the Court on the Government's Petition for Action on Conditions of Pretrial Release (#16), filed on July 19, 2011. The Court conducted an evidentiary hearing on the petition on August 11, 2011. The Court now issues its decision and order on the Government's motion that Defendant Soria's pretrial release be revoked and that he be detained pending trial.

## BACKGROUND

      The indictment filed on April 20, 2011 charges Defendant Alex P. Soria with wire fraud in violation of 18 U.S.C. §1343, mail fraud in violation of 18 U.S.C. §1341, concealment of information from the Social Security Administration in violation of 42 U.S.C. §408(a)(4), and theft of government property in violation of 18 U.S.C. §641. *Indictment (#1)*. The wire fraud and mail fraud counts are based on the allegations that Defendant fraudulently solicited distressed homeowners to hire him as a mortgage agent to help them obtain financing and assistance through the Hope for Homeowners program and the Troubled Asset Relief Program (TARP). The indictment alleges that Defendant falsely represented to clients that he was employed as a loan officer by a mortgage company and that Defendant concealed the fact that he was not a licensed mortgage agent in Nevada. The indictment also alleges that Defendant falsely represented to

homeowners that they had been pre-qualified for loans. The Defendant allegedly collected thousands of dollars in fees from this alleged fraudulent scheme, while at the same time continuing to collect Social Security Disability Benefits.

    Defendant Soria pled not guilty to the indictment on April 21, 2011. He was released from custody subject to Pretrial Services supervision. Among the conditions that the Court imposed on the Defendant was the condition prohibiting him from working in the mortgage industry. Defendant's pretrial release was also subject to the standard condition that he not violate any federal, state or local law while on pretrial release. *See Order Setting Conditions of Release (#9)*. The Pretrial Services officer provided Defendant with a copy of his conditions of release and reviewed in detail with him the requirements of each condition and the potential consequences for noncompliance. Defendant subsequently told the Pretrial Services officer on June 30, 2011 that he was employed as the CEO of Bio Green Tech in Las Vegas, Nevada. Defendant indicated that this business contracts to service grease traps at restaurants and casinos. Defendant also told the Pretrial Services Officer that he was not employed either directly or indirectly in any business involving the mortgage industry.[1]

    The Government called Special Agent Kelly Slade of the Office of Inspector General for Housing and Urban Development (HUD) as a witness at the August 11, 2011 revocation hearing. Agent Slade testified that her duties include the investigation of crimes involving HUD related programs, including FHA mortgage fraud. Agent Slade testified about the circumstances relating to the charges in the indictment against Mr. Soria. She also testified that in December 2009 the Nevada Division of Mortgage Lending issued a cease and desist order to Mr. Soria which prohibited him from engaging in any mortgage lending activity because he is not a licensed mortgage agent in Nevada.

    Agent Slade testified that in early July 2011 she was notified by the Assistant Recorder of Clark County, Nevada that Defendant was possibly engaging in unlawful activity relating to deeds

---

[1] The foregoing information is contained in the August 11, 2011 Memorandum that the Pretrial Services officer provided to the Court. Counsel for both parties stipulated to the accuracy of the Pretrial Services officer's statements.

of trust. The Assistant Recorder provided Ms. Slade with a list of 25 deeds of full reconveyance on which Defendant Soria was identified as the trustee. All of the deeds of full reconveyance were recorded in June 2011. Agent Slade testified about her discussions with three particular homeowners/ trustors to whom deeds of full reconveyance were issued/delivered by Defendant Soria: Crispulo Cabillo, Pamela A. Cobb and Estrella Elegado. These individuals told Agent Slade that Defendant Soria had provided them with information about a "Zero Mortgage" program or "Mortgage Elimination" program. He told them that for a fee ranging from $1,000 to $2,000 he could create two documents that they would record at the county recorder's office. The first document was an "affidavit of fact" and the second document was "a deed of full reconveyance." Mr. Soria told them that once these documents were recorded, their mortgages would be eliminated. All three individuals told Agent Slade that they paid a fee to Mr. Soria for preparation of the documents. The individuals stated that they had met with Mr. Soria beginning as early as February 2011 and as recently as June 30, 2011. The three individuals met with Defendant Soria at his office located at Bio Green Tech and/or at his residence which Agent Slade testified is owned by Sonia Rodis.

The Government introduced copies of five deeds of full reconveyance, all of which state as follows:

> Alex P. Soria, Trustee under Deed of Trust mentioned below, having duly requested in writing to make this reconveyance by reason of satisfaction of the obligation secured by said Deed of Trust, does hereby quitclaim and reconvey to the person(s) legally entitled thereto, but without warranty, express or implied, all of the property covered by said Deed of Trust.

*Government's Exhibit 2.*

Three of the deeds of full reconveyance were issued/delivered to Crispulo T. and Marietta A. Cabillo. Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as beneficiary on two of the deeds of trust and Federal Savings Bank was listed as the beneficiary on the third. Two of the deeds of full reconveyance to the Cabillos were signed by Mr. Soria on June 24, 2011 and were recorded that day. The third deed of full reconveyance to the Cabillos was signed by Mr. Soria on February 11, 2011, but was not recorded until June 24, 2011. *Id.* A fourth deed of full

reconveyance was issued/delivered to Pamela A. Cobb and listed Home American Mortgage Corporation as the beneficiary.  This deed of full reconveyance was signed by Mr. Soria on June 29, 2011 and was recorded on June 30, 2011.  The fifth deed of full reconveyance was issued/delivered to Estrella Elegado and listed MERS as the beneficiary.  This deed of full reconveyance was also signed by Mr. Soria on June 29, 2011 and recorded on June 30, 2011.  *Id.*

      Agent Slade testified that Mr. Cabillo also provided her with a partially completed "Simple Demand Promissory Note" form which bears the signature of Alex P. Soria as "lender."  The amount of the note is $15,000.  The note is not dated, however, and does not contain the name or signature of the "borrower."  *Exhibit 2.*  Mr. Cabillo told Agent Slade that he received this promissory note from Alex P. Soria.  Mr. Elegado and Ms. Cobb also told Agent Slade that Mr. Soria provided them with similar promissory notes.  All three individuals told Agent Slade that they paid Mr. Soria between $1,000 and $2,000 for the "affidavit of fact" and the deeds of full reconveyance and that they were supposed to pay Mr. Soria between $10,000 and $15,000 once the deeds of full reconveyance were recorded.  Estrella Elegado also told Agent Slade that he attended a program given by Mr. Soria regarding the "Zero Mortgage" program.  He stated that he believed more than a hundred persons attended the program.

      Agent Slade testified that Mr. Cabillo, Mr. Elegado and Ms. Cobb also told her that they had met with Mr. Soria at the Bio Green Tech office in regard to the elimination of their mortgage obligations.  Through the Nevada Secretary of State's records, Agent Slade determined that Sonia Rodis is the manager of Bio Green Tech, LLC.  Agent Slade went to Bio Green Tech's office on July 7, 2011 to interview Hans Johns who notarized most of the deeds of full reconveyance.  While at the office, Agent Slade observed clients come in and request to meet with Mr. Soria or Sonia Rodis.  Two clients asked the receptionist to deliver mortgage paperwork to Mr. Soria after they were informed that he was not in the office.  Mr. Johns confirmed to Agent Slade that he notarized Mr. Soria's and Sonia Rodis' signatures on the affidavits of fact or deeds of full reconveyance and stated that they were always physically present when he notarized their signatures.

      Agent Slade testified that she arrested Mr. Soria at the Bio Green Tech office on July 20, 2011.  Ms. Rodis was also in the office when the arrest was made.  Mr. Soria's wallet was taken

from him following his arrest. Eight checks were found in Mr. Soria's wallet which were made payable to Bio Green Tech, LLC. A ninth check was made payable to Alex Soria. All but one of the checks were dated in July 2011. One check was dated "8 30-11". The checks were in amounts ranging from $400 to $2,065. *Government's Exhibit 1*. Agent Slade testified that Mr. Soria told her that these checks were from clients of his "Mortgage Elimination" program. Mr. Soria also told Agent Slade that he had successfully eliminated the mortgage on Sonia Rodis's home by using this "Zero Mortgage" or "Mortgage Elimination" program. Mr. Soria stated, however, that the lender had not agreed with or acknowledged the paperwork that he had recorded.

Mr. Soria made his initial court appearance on the petition to revoke his pretrial release on July 21, 2011. Magistrate Judge Leavitt ordered that Mr. Soria be released from custody pending the revocation hearing, subject to the additional condition of home incarceration at his daughter's residence. Prior to July 21st, Mr. Soria resided either with his daughter or with Sonia Rodis. Following Mr. Soria's release on July 21, 2011, the Government conducted surveillance or other investigation to determine whether Mr. Soria was violating the conditions of pretrial release, including the newly imposed home incarceration condition. Agent Slade testified that another agent went to the Bio Green Tech office on August 7, 2011. The agent portrayed himself as a homeowner and asked if he could meet with Mr. Soria about a loan modification. The receptionist told the agent that Mr. Soria was not available, but that Mr. Soria's business partner and wife, Sonia Rodis, could meet with him. The agent did not meet with Ms. Rodis who was dealing with another client. On cross-examination, Agent Slade testified that the Government has not obtained any evidence that Mr. Soria has personally met with any person regarding a loan or mortgage modification since his release from custody on July 21, 2011.[2] Nor has the Government obtained any evidence that Mr. Soria has violated the home incarceration condition.

The Government also called Assistant Clark County District Attorney Clifford Jeffers as a witness at the evidentiary hearing. Mr. Jeffers is employed in the civil division of the district

---

[2] Documents introduced by the Government show, however, that Defendant's girlfriend, Sonia Rodis, has executed deeds of full reconveyance since Defendant was arrested and released on the petition to revoke his pretrial release. *See Government's Exhibits 3, 4* and *5*.

attorney's office and is responsible for providing legal advice to the Clark County Recorder's Office. Mr. Jeffers testified that Mr. Soria first came to his attention in 2008 in regard to a document that was submitted for recording. Mr. Soria next came to Mr. Jeffers' attention in April 2010 when he received a message that Mr. Soria wanted to meet with him. Mr. Jeffers spoke to the Recorder's Office about the issues involving Mr. Soria. Mr. Jeffers was informed that Mr. Soria had submitted some documents for recording which were rejected by the Recorder's Office. Mr. Jeffers testified that the rejected documents were part of a general transaction or program that involves the recording of "affidavits of fact," substitutions of trustee and deeds of full reconveyance which purport to eliminate homeowners/trustors' loan obligations.

      Mr. Jeffers testified that he thereafter spoke by telephone with Mr. Soria. Mr. Soria stated that he wanted to meet with him to explain his program and persuade Mr. Jeffers that it was legal and that he should advise the Recorder to permit the documents to be recorded. At Mr. Jeffers' request, Mr. Soria sent him an email in which he explained the program as follows: The trustor would execute and send an "affidavit of fact" to the lender stating that the loan secured by the deed of trust was legally invalid and unenforceable. The affidavit demanded the lender to respond within so many days to the trustor's assertion of invalidity, and that the failure to respond would be considered acquiescence to the assertion that the loan obligation was invalid. The affidavit also stated that the trustor would replace the existing trustee on the deed of trust with a new trustee, usually Mr. Soria. The new trustee would declare the loan totally satisfied and would then issue a deed of full reconveyance of the property to the trustor.

      Mr. Jeffers testified that Mr. Soria later told him that the program was authorized under the "Federal Administrative Procedures Act of 1946." Mr. Jeffers testified that he sent an email to Mr. Soria in the Summer of 2010 informing him that his program violated Nevada law. Mr. Jeffers was later informed that Mr. Soria had met with District Attorney David Roger and County Counsel Mary Ann Miller in late December 2010. Ms. Miller told Mr. Jeffers that District Attorney Roger informed Mr. Soria that his program was illegal and that he should stop the activity or "they" would prosecute him. Mr. Jeffers testified on cross-examination and/or redirect examination, however, that prosecutions relating to mortgage or financial fraud are handled by the Nevada Attorney

General and not by the Clark County District Attorney.

Mr. Jeffers testified that he had initially advised the Clark County Recorder's Office not to accept Mr. Soria's documents for recording. In May 2011, however, the Washoe County Recorder informed the Clark County Recorder that Washoe County accepts such documents for recording based on the advice of law enforcement agencies that the recording of the documents will complete the illegal transaction and establish a better case for criminal prosecution. The Clark County Recorder therefore began accepting the documents for recording in or about May 2011. At Mr. Jeffers' request, the Assistant County Recorder prepared a spread sheet which shows the number of affidavits of fact and deeds of full reconveyance that have been recorded as part of the "Mortgage Elimination" program since the end of May 2011. *Government's Exhibit 3*. This spread sheet identifies numerous affidavits of fact or deeds of full reconveyance in which Mr. Soria or Ms. Rodis are listed as the trustees.[3] Although there are no documents recorded since July 21, 2011 which list Mr. Soria as the trustee, some of the documents do list Ms. Rodis as the trustee.

On cross-examination, Defendant's counsel attempted to obtain testimony from Mr. Jeffers as to whether the underlying loans or deeds of trust are legally invalid or unenforceable under Nevada law. Mr. Jeffers refused to make such a concession, although it does not appear that he is familiar with court decisions discussing the "securitization" of mortgage obligations and whether certain loans and/or mortgages or deeds of trust are legally invalid or unenforceable. Rather than summarize the back and forth between Defendant's counsel and Mr. Jeffers on this issue, the Court will address its significance for purposes of this case in the following discussion.

## DISCUSSION

The Court first addresses whether the crimes that Defendant Soria is accused of committing while on pretrial release provide a legal basis to revoke his pretrial release and order that he be detained.

. . .

---

[3] Based on the Court's count, Mr. Soria is listed as trustee on 56 affidavits of fact or deeds of reconveyance that have been recorded since May 31, 2011.

Only certain types of criminal charges initially qualify a defendant for pretrial detention under the Bail Reform Act, 18 U.S.C. §3141 *et. seq.*, as a serious or substantial risk of danger to other persons or the community. *See* 18 U.S.C. §3142(f)(A)-(E). "Economic crimes" such as mortgage or financial fraud do not qualify as such offenses. *United States v. Giordano*, 370 F.Supp.2d 1256, 1261-62 (S.D.Fla. 2005), citing *United States v. Himler*, 797 F.2d 156, 160 (3rd Cir. 1986); *United States v. Byrd*, 69 F.2d 106, 109-10 (5th Cir. 1992); and *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988). In deciding whether to detain a defendant as a flight risk, however, the court may consider whether he will continue to engage in economic crimes while on pretrial release. *Giordano*, 370 F.Supp.2d 1269-70. The court may also consider the economic danger posed by the defendant in fashioning conditions of pretrial release to protect other persons or the community. In this case, for example, the Court ordered as a condition of release that Defendant Soria not work in the mortgage industry.

"Although the court applies Sec. 3142(e) and (f) in ruling on a motion for detention at the outset of a case, an entirely different set of standards governs whether the court detains a defendant charged with violating conditions." Weinberg, FEDERAL BAIL AND DETENTION HANDBOOK (2011) §11.03. 18 U.S.C. §3148(a) states that "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." Subparagraph (b) of this section further provides as follows:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—
>
> (1) finds that there is—
>   (A) probable cause to believe that the person has committed a Federal, State or local crime while on release, or
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any person or the community; or
>   (B) the person is unlikely to abide by any condition or combination of conditions of release.

> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.  If the judicial officer finds that there are conditions of release that will assure that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

Unlike §3142(f), there is no limitation in §3148(b) regarding the types or categories of Federal, State or local crimes that will support an order revoking pretrial release.  In *United States v. Gill*, 2008 WL 212069 (E.D.Cal. 2008), the defendant was originally indicted for wire fraud. Defendant was subsequently charged in a second wire fraud indictment for conduct that was allegedly committed while he was on pretrial release.  In revoking the defendant's pretrial release and ordering that he be detained pending trial, the court stated:

> Gill posits the fact that (for the most part) economic crimes will not trigger the danger to the community analysis in initial detention hearings, and that is true. 18 U.S.C. § 3142(f). However, "any felony" as an underlying offense will trigger the danger analysis depending on the defendant's criminal record, § 3142(f)(1)(D).  But in post-initial detention proceedings, the Ninth Circuit has unequivocally ruled that economic harm may be considered as a justification for detaining someone as a danger to the community.
>
> We agree with the district court that Reynolds has failed to show by clear and convincing evidence that he does not constitute an economic danger to the community. We further hold that danger may, at least in some cases, encompass pecuniary or economic harm. *See United States v. Provenzano,* 605 F.2d 85, 95 (3rd Cir.1979) (danger not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence within a labor union); *United States v. Parr,* 399 F.Supp. 883, 888 (W.D.Tex.1975) (pecuniary harm).
>
> *United States v. Reynolds,* 956 F.2d 192-193 (9th Cir.1992) (ruling in a bail pending appeal situation *and* a violation of pretrial release situation). *See also, United States v. Zaragoza,* 2008 WL 686 825 (N.D.Cal.2008); *United States v. Shareef,* 907 F.Supp. 1481 (D.Kan.1995).
>
> The correctness of the *Reynolds* holding is easily seen by reference to the post-initial detention statutes themselves which contain none of the danger limiting language of the initial detention statute, and place a burden of rebuttal on the defendant in matters or pretrial release revocation for violating criminal laws. *See* § 3148(b) (violation of criminal law gives rise to a presumption that the defendant is a danger to the community which the defendant must rebut). And, even

> if defendant attempts to rebut the presumption with evidence, the presumption remains with appropriate evidentiary force. *See United States v. Cook,* 880 F.2d 1158, 1162 (10th Cir.1989) (and cases cited therein).

*Gill*, 2008 WL 2120069 at *3.

This court agrees with the *Gill* court's construction of §3148(b) and also with its analysis of *United States v. Reynolds.*

*Gill* also held that the second indictment in that case provided the requisite probable cause to revoke the defendant's pretrial release and detain him pursuant to §3148(b)(1)(A). *Id.* 2008 WL 2120069 at *2. Defendant Soria, however, has not been formally charged, let alone indicted, in regard to the so-called "Zero Mortgage" program or "Mortgage Elimination" program. The Court must therefore determine whether the Government presented sufficient evidence at the revocation hearing to support a finding of probable cause to believe that Defendant Soria has committed a Federal, State or local crime while on pretrial release.

"[P]robable cause means 'fair probability, not certainty or even a preponderance of the evidence.'" *United States v. Krupa*, 633 F.3d 1148, 1151 (9th Cir. 2011), quoting *United States v, Gourde,* 440 F.3d 1065, 1069 (9th Cir.2006) (en banc). "[W]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question,'" for which "[n]either certainty nor a preponderance of the evidence is required." *Id.* quoting *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) and *Illinois v. Gates,* 462 U.S. 213, 246, 103 S.Ct. 2317 (1983).

The testimony of HUD Special Agent Slade and Assistant Clark County District Attorney Jeffers, together with the documentary exhibits admitted at the hearing, establish probable cause to believe that Defendant Soria and his associates have engaged in a fraudulent scheme whereby, in exchange for fees ranging from $1,000 to $2,000, they create "affidavits of fact" and deeds of full reconveyance which purport to eliminate the customers' obligations on loans secured by deeds of trust. The "elimination" of the mortgage obligation is allegedly accomplished by the affidavit's unilateral declaration that the loan obligation and/or deed of trust is invalid. These "affidavits of fact," however, are obviously of no legal effect. In order to actually terminate the loan obligation

and the deed of trust, the borrower/trustor must either reach agreement with the lender/beneficiary or its assignee to terminate the obligation, or obtain a court judgment declaring the mortgage obligation invalid.

The evidence is also sufficient to support probable cause to believe that Defendant Soria had no reasonable basis to believe that the documents he created for the customers were legally valid and would, in fact, eliminate their mortgage loan obligations. Mr. Jeffers testified that he notified Defendant Soria by email in the Summer of 2010 that his program or scheme violated Nevada law. Mr. Jeffers also testified that Defendant was informed by the Clark County District Attorney that his program was illegal and that if he continued to engage in it, he would be prosecuted.

The Government did not identify the criminal statutes that Defendant Soria has allegedly violated by virtue of the foregoing scheme. Defendant argues that the Government's failure to do so is fatal to its petition to revoke his pretrial release. It appears, however, that the alleged conduct, if charged in an indictment, information or criminal complaint and proven at trial, would constitute the gross misdemeanor crime of fraudulent conveyances under Nevada Revised Statutes (NRS) Section 205.330. It would also constitute the crime of obtaining money by false pretenses in violation of NRS 205.380. Based on the amount of the fees that Defendant allegedly obtained from individual customers, Defendant would be subject to a term of imprisonment of 1 to 6 years for a conviction under NRS 205.380, which is a felony.

Defendant's alleged conduct also appears to violate NRS 205.377 which states that "[a] person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact[.]" A conviction under this statute is also a felony and may result in a prison sentence of 1 to 20 years. While the Government obviously should identify the specific criminal statutes that the defendant has allegedly violated while on pretrial release, the failure to do so is not fatal, at least where, as here, the alleged conduct clearly violates applicable Federal or State criminal statutes.

Defendant argued that the Government has failed to establish probable cause because the loan obligations and deeds of trust, which the documents allegedly prepared by Defendant purport to eliminate, may not by themselves be legally valid or enforceable. Defendant cites the Court to the Nevada Supreme Court's recent decisions in *Pasillas v. HSBC Bank USA*, ---P.3d ----, 2011 WL 2671894, 127 Nev. Adv.Op. 39 (2011) and *Leyva v. National Default Servicing Corp.*, ---P.3d --- , 2011 WL 2670183, 127 Nev.Adv.Op. 40 (2011). Both of these cases deal with the requirement under the Nevada Foreclosure Mediation Program statute that the lender bring to the mediation conference the original or a certified copy of the deed of trust, the mortgage note, and each assignment of the deed of trust or mortgage note. The lender's failure to strictly comply with this requirement subjects it to sanctions under the mediation statute. Neither *Pasillas* or *Leyva* make any statement generally declaring "securitized" mortgage instruments invalid. It may be possible that some of the individuals who allegedly paid fees to Defendant and his associates have legitimate claims or defenses relating to their loans or mortgage obligations. That possibility, however, does not remove the fraudulent nature of the scheme allegedly perpetrated by Defendant Soria and his associates. That scheme clearly does not provide a lawful mechanism to resolve such issues.

Pursuant to §3148(b)(1)(B), there is also clear and convincing evidence that Defendant Soria has violated the condition of his pretrial release which prohibits him from working in the mortgage industry. As set forth above, Defendant has allegedly collected substantial fees from real property owners by creating documents which eliminate the customers' mortgage obligations. Pursuant to the scheme, Defendant or his associates are appointed as substitute trustees and thereupon execute deeds of full reconveyance to the property owners. Defendant Soria concealed his involvement in this activity from his Pretrial Services officer. He told the officer that his business contracts to service grease traps at restaurants and casinos and that he was not employed either directly or indirectly in any business involving the mortgage industry.

Because there is probable cause to believe that Defendant has committed felony crimes while on pretrial release, there is a rebuttable presumption under §3148(b) that no condition or combination of conditions will assure that Defendant will not pose a danger to the safety of any

other person or the community. Defendant has not presented evidence sufficient to rebut this presumption. This case does not involve an alleged single or isolated criminal act. Instead, the evidence shows that while on pretrial release, Defendant Soria has engaged in numerous fraudulent transactions and has collected substantial fees from the alleged victims of the mortgage elimination scheme. On the day of his arrest, Defendant was in possession of nine checks totaling in excess of $9,000 which he had collected from customers of the scheme. Although there is no evidence that Defendant Soria has personally engaged in such transactions since he was placed on home incarceration on July 21, 2011, the Government has provided evidence that Defendant's girlfriend and business partner in Bio Green Tech, Sonia Rodis, has continued to engage in the scheme since that date, notwithstanding Defendant Soria's arrest. As stated above, Defendant was specifically prohibited by this Court from working in the mortgage industry. Not only did Defendant violate that condition, he concealed his activity from the Pretrial Services officer. Under these circumstances, there are not conditions or combination of conditions of release that the Court could impose that would adequately assure that Defendant Soria will not continue to engage in this illegal conduct through his associates, including Ms. Rodis, even if he is continued under the home incarceration condition.

## CONCLUSION

The Court therefore concludes, pursuant to 18 U.S.C. §3148(b), that Defendant Soria's pretrial release should be revoked and that he should be detained. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Alex P. Soria's pretrial release is **revoked** and that he be **detained** pending trial in this case.

**IT IS FURTHER ORDERED** that a warrant shall issue for Defendant Soria's arrest and that he be remanded to the custody of the United States Marshal to be detained pending trial.

DATED this 17th day of August, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge